## John V. Schaefer, Jr., and Company vs. Elizabeth L. Ely et als.

Third Judicial District, Bridgeport, April Term, 1911.

Hall, C. J., Prentice, Thayer, Roraback and Wheeler, Js.

An estoppel *in pais* may be proved although not alleged; and therefore the elimination of such a defense on demurrer, even if erroneous, is harmless, provided it appears from the record that evidence in support of all the material facts therein set forth was received and considered upon the trial of the cause.

In the present case a building contractor sought to recover a balance alleged to be due for the fulfilment of the contract. The defendants, who owned the building, averred in one of their defenses, as a ground of estoppel, that they informed the plaintiff that the cost of the undertaking was of importance to them and would determine their action in respect to putting up a contemplated addition to the building then being erected, and that they were induced to make the contract upon the plaintiff's estimate and representation that the building, including the contemplated addition, could be erected for a specified sum, whereas it in fact greatly exceeded that amount. *Held* that this defense was entirely overthrown by the finding of facts, irrespective of any question as to the legal insufficiency of its allegations.

A member of a firm of architects, who was a qualified construction engineer, testified that he drew the plans, specifications and contract for a building, and was familiar with all changes therein and with the progress of the work, through the books and records in the office and the reports made to the firm by their superintendent of construction, and from statements made to him by this superintendent and by the owner and the contractor; he also testified that he had made a personal examination of the building upon its alleged completion for the purpose of issuing the architects' final certificate. *Held* that he might state what deductions he had allowed for defective or omitted work, and the basis upon which the final certificate of the completion of the contract had been issued; and that for this purpose he might give his opinion as to whether the work had been done properly and in accordance with the contract and its modifications, without detailing at length the manner in which each item of the work had been performed.

Under such circumstances it is not necessary to leave the question of compliance with the contract, to be drawn as a conclusion by the court from a comparison of its requirements with the work actually done.

The opportunity of cross-examination, and the presence in court of the contract, plans and specifications, and the ability of the opposing party to examine the work done and test the sufficiency of the opinion, render such evidence practically safe against misrepresentation.

When facts sought to be proved are of so voluminous or complicated a character that their introduction would occupy much time, and might be difficult to understand by themselves, and these many facts are to be proved for the purpose of drawing a conclusion from them, the court may permit a witness who is qualified upon the subject of investigation and has made it, to express an opinion, without giving the details on which that rests.

Argued April 20th—decided July 31st, 1911.

ACTION to recover a balance due under a building contract, and also for the value of extra work in connection therewith, brought to and tried by the Superior Court in Fairfield County, *Curtis, J.;* facts found and judgment rendered for the plaintiff for $37,402, and appeal by the defendants. *No error.*

*John C. Chamberlain,* with whom was *George G. Mc-Nall,* and, on briefs, *Messrs. Ivins, Mason, Wolff* and *Hoguet* of New York, for the appellants (defendants).

*Edwin L. Scofield* and *Wilbur S. Wright,* for the appellee (plaintiff).

WHEELER, J.  In the second count of the complaint the plaintiff alleges that on October 2d, 1905, the plaintiff and defendants entered into an agreement whereby the plaintiff was to furnish all material and labor for the erection of the buildings known as The Misses Ely School Building at Greenwich, Connecticut, in accordance with the plans and specifications of Carrere and Hastings, architects, with such modifications as might be desired by the defendants, in consideration of the payment to it by the defendants of a sum equal to the cost of the work and $7,500 commission, and 5 per cent.

upon the cost of the added or modified work. The plaintiff alleges that there is still due and unpaid, according to the architects' certificate, $38,665.89.

In the first count the plaintiff sets forth allegations in support of its claim to foreclose a mechanic's lien. In the second count it sets forth allegations in support of a money recovery. In the trial the plaintiff did not claim a judgment of foreclosure of the mechanic's lien, but asked for a money judgment, so that the allegations relating to a foreclosure may be omitted from consideration.

The appeal raises two questions, one upon the decision sustaining the demurrer to the seventh defense, and one upon a ruling on the evidence. In their seventh defense to both counts the defendants allege: 1. On March 10th, 1906, the defendants were desirous of constructing a wing to The Misses Ely School Building, provided the cost of building and wing should not exceed the amount of money which they could control to pay for the same, and would not exceed the amount which could properly be invested in the business, which was the only business said building would be suitable for. 2. On said date they acquainted the plaintiff with such desire and the reasons why a knowledge of said cost was of importance to them, and informed it that the amount of it would determine their action in the matter of building said west wing. 3. The plaintiff, at the request of defendants, furnished them a statement of the work done and an estimate of the amount to be done to complete said main building as planned, being $152,447, and represented that said wing could be built for $35,000. 4. Relying upon said statement, the defendants embarked upon the construction of said wing. 5. The plaintiff incurred bills against the defendants for more than $200,000 in the construction of said building and wing, which amount

was vastly in excess of the resources of the defendants, and of the amount justified by the business to be transacted in said building; and all of the money expended upon said building in excess of the amount stated by the plaintiff as necessary to build and finish the same, was lost to the defendants. 6. The plaintiff should be estopped from collecting from the defendants any sums in excess of the amount represented by them as necessary to build and complete said building.

The plaintiff demurred to this defense, upon the ground that it was under no duty to inform the defendants of the estimated cost of the building and the wing addition; that it never contracted to construct the building and the wing addition for $187,447, and if it did make such estimate the defense did not allege that it was made for the purpose of inducing the defendants to construct the said addition. This defense was intended to present an estoppel *in pais*.

It might be difficult, under the allegations of this defense, to escape from the defects of the defense which the plaintiff presses upon us: that the defendants must allege not only an absence of knowledge of the truth, but of facts which show that they did not have equal means of knowledge with the plaintiff, and that the representation relied upon was made wilfully, or intentionally, or fraudulently, or in gross negligence, with intent to be relied on, and the defense is void of such allegations; that the representation relied upon is an expression of opinion and cannot be regarded as a misrepresentation creating an estoppel; and that it is of a promissory character, relating to the future and not to past or present facts. But these and other grounds of demurrer were not a part of the demurrer before us.

Likewise, to sustain the demurrer upon the grounds which it does allege, would present some difficulty.

Whether the plaintiff was under "any duty" to inform the defendants would seem to be immaterial, since it did in fact furnish the information, and the facts which set forth the estoppel are based upon its response, as requested by the defendants. The second ground of demurrer, that the plaintiff had not contracted to complete the main building and wing, would appear to be equally ineffective, since the estoppel did not depend upon a definite agreement, but upon a course of conduct. The third ground, that there is no allegation that the representations were made for the purpose of "inducing" the defendants to act, seems at variance with the allegations of the purpose for which the defendants wished the knowledge, viz., to determine their action in building the west wing, and that the plaintiff gave this information "in compliance with said request, and to be used for the purposes aforesaid."

Regardless of the sufficiency of this seventh defense to withstand a demurrer based upon the grounds now claimed by the plaintiff, its elimination from the case has done the defendants no harm. They attempted to plead an estoppel *in pais.* That was unnecessary: such estoppel could be proved without being pleaded. *Bernhard* v. *Rochester German Ins. Co.,* 79 Conn. 388, 395, 65 Atl. 134; *Fish* v. *Smith,* 73 Conn. 377, 387, 47 Atl. 711; *Plumb* v. *Curtis,* 66 Conn. 154, 173, 33 Atl. 998; *Hawley* v. *Middlebrook,* 28 Conn. 527, 536. And the finding discloses that proof was offered of facts relied upon to establish the estoppel alleged in the seventh defense.

It is not essential to enter into a minute comparison between the finding and the terms of this defense, to show that proof of the facts of the estoppel were before the court. It will suffice to point out some of the differences between finding and defense. The court finds that the defendants decided to build the west wing on

March 12th, and the estimates of the cost of the main building up to that time were not furnished until March 16th, and the estimates of the wing until after this date, thus negativing the allegation of the estoppel that the estimate induced the construction of the wing. The court finds the estimate of this wing was $44,132 instead of $35,000 as stated in the defense. The court finds that the wing was to be built upon the terms and provisions of the contract for the main building, under which the plaintiff was to be paid the cost of construction plus a commission for its services, and the cost of extra work with a commission thereon. The defense alleges that after the estimates were received the defendants, with the knowledge of the plaintiff, relied upon them and embarked upon the work. Before this work was begun, it is thus seen, a definite contract was made, contemplating modified plans and extra work done by direction of the owner. Changes and additions in the work were made, either by the defendants themselves or through their architects, and these, with the cost of the wing, amounted to $158,106.03, and $59,507.14 was paid by the defendants directly to the persons doing the extra work. The court finds the plaintiff fully performed its contract and furnished said extras, and the architects so certified. Further, the court finds the work was done under the personal supervision of one of the defendants, and that he acted for all the defendants, and passed upon all payrolls and material accounts, and made payments on account of the contracts, and was fully conversant with all the plaintiff did in the construction of the building. Not only does the finding shatter completely this defense, but it presents the case of work done and materials furnished to the amount found by the court, under contracts carried out by the contractor under the defendants' direction and with their knowledge. The

extravagance of the owners, or of their agents, in exceeding the expenditure anticipated by the majority of the owners, furnishes no equitable reason why the contractors should not be paid the amount expended by them by the direction of the defendants, plus the commission provided for their services. The defendants have had their opportunity to prove every allegation of the seventh defense, and, though it had been a part of the case, it could not avail them: the facts are inconsistent with its facts. Under such circumstances, if the demurrer in its form and terms were held to be unsupported, a new trial should not be granted, as no harm has resulted to the defendants from this ruling. *Mechanics Bank* v. *Woodward*, 74 Conn. 689, 691, 51 Atl. 1084; *White* v. *Avery*, 81 Conn. 325, 328, 70 Atl. 1065; *Scott* v. *Scott*, 83 Conn. 634, 636, 78 Atl. 314; General Statutes, § 802.

One ruling only is made a ground of appeal. Mr. Brainerd, a construction engineer, and one of the firm of architects entrusted with the building of The Ely School, qualified as an expert upon the character and manner of the construction of The Ely School Building and the west wing. He testified that he drew the plans, specifications, and contract, and was familiar with and knew of all subsequent changes and additional work, and that as the work progressed it was constantly within his knowledge through the books, reports, and records in his office, and that he made an examination of the work in April, 1907, for the purpose of enabling him to determine as to the acceptance of the work and the issuance of the final certificate. He was inquired of as to whether he was satisfied from that examination that the work called for by the contract, and as in fact done, had been done in a workmanlike manner. The defendants objected to the question because not a subject for an opinion. At the request of

the witness, and over the objection of the defendants, the court permitted the witness to use, in expressing his opinion, the entire information he had as to the progress of the work. That information, the witness stated in his answer, was derived from the firm's superintendent, the owner, and the contractor; and upon it was based the deductions for an allowance of $1,700 for defective or omitted work called for by the contract, and the final certificate of the architects, issued by him, as to the completion of the contract. In response to a direct question, the witness stated that with the exception of the items of allowance of $1,700 he found the building had been constructed in a workmanlike manner, and in accordance with the plans and specifications and the modifications and changes that took place. This evidence all came in under the same objection.

We think the defendants may be fairly held on this record to have objected because the matter was not a subject for an opinion, and because in giving such opinion the witness could not use information of which he did not have personal knowlege. The witness is stating the manner in which he made up his estimate of the $1,700 deductions for defective and omitted work, for the purpose of the issuance of the architects' final certificate. For such a purpose the evidence was admissible.

Even though, in some view of the case, the evidence might have been inadmissible, its reception was not harmful to the defendants; for the court finds not only that the allowance of $1,700 was fair and reasonable, but that the defendants admitted on the trial "that the final certificate of the architects was final and conclusive to the extent of the defective work and the cost of remedying the same, and no claim was made of their right to recover under their counterclaim for any amount in excess of that allowed by said architects." The main objection to this evidence was that the

opinion of the witness could not be given, that he must state in detail what he saw, and the various defects, and leave the conclusion of compliance with the contract to be drawn by the court between the contract and the work done.

This is an erroneous view. The witness who qualifies as an expert and testifies to his familiarity with contract, plans, specifications, and changes therein, and with the work done, may give his conclusions as to the comparison between these, without detailing at length the manner in which each item of the work done has been performed. When the opinion of the witness in a case is evidence otherwise competent, and the subject of the investigation will be made clearer by its introduction, the opinion should be received. When facts sought to be proved are of so voluminous or complicated a character that their introduction would occupy much time, and might be difficult to understand by themselves, and these many facts are to be proved for the purpose of drawing a conclusion from them, the court may permit a witness who is qualified upon the subject of investigation, and has made the investigation, to express an opinion without giving the details on which the opinion rests. The opinion of the expert as to whether a building is finished in a workmanlike manner, or according to certain plans and specifications, is admissible for the same reason as is the opinion of the accountant as to the result of his examination of the books of account, or as to schedules taken from the books, verified by him (*Elmira Roofing Co.* v. *Gould,* 71 Conn. 629, 631, 42 Atl. 1002), or as summaries or averages from voluminous or complicated records are admitted. 2 Wigm. on Ev. (Ed. 1904) § 1230.

The necessities of the situation, taken in connection with the improbability of liability to misrepresentation, led to the rule admitting the opinion of the accountant

and the record searcher, and the situation is as urgent permitting the qualified architect or mechanic to testify as to whether work is done in a workmanlike manner, or according to a contract. The opportunity of cross-examination, and the presence in court of contract, plan, and specifications, and the ability of the opposing party to examine the work done and test the sufficiency of the opinion, render such a source of evidence practically safe against misrepresentation.

The authorities upon this, as upon many subjects of opinion evidence, are variant, with a strong tendency to widen the scope of opinion evidence. *Atwood* v. *Atwood,* 84 Conn. 169, 79 Atl. 59. The following are instances of correct applications of the general rule: The qualified witness may state that the work is well done. *Wood* v. *Brewer & Brewer,* 57 Ala. 515, 517; *Ward* v. *Kilpatrick,* 85 N. Y. 413. He may state that the machine was built in a good and workmanlike manner. *Curtis* v. *Gano,* 26 N. Y. 426; Abbott's Trial Ev. (2d. Ed.) 430. He may state whether a railroad was properly constructed at a certain point. *St. Louis, A. & T. Ry. Co.* v. *Johnston,* 78 Tex. 536, 15 S. W. 104. He may state the cost of erecting a building from plans, or similar to one destroyed. *Joske Bros.* v. *Pleasants,* 15 Tex. Civ. App. 433, 440, 39 S. W. 586; *Woodruff* v. *Imperial Fire Ins. Co.,* 83 N. Y. 133, 138. He may state that the building was constructed in accordance with the contract. *Kreuzberger* v. *Wingfield,* 96 Cal. 251, 31 Pac. 109; *Stark Grain Co.* v. *Harry Bros. Co.,* 57 Tex. Civ. App. 529, 122 S. W. 947; *Tucker* v. *Williams,* 2 Hilt. (N. Y.) 562; *Taulbee* v. *Moore,* 106 Ky. 749, 752, 51 S. W. 564; *Johnson* v. *Griffiths & Co.* (Tex.), 135 S. W. 683. He may give his opinion as to the difference in value of a vessel as repaired, and what her value would have been if repaired according to the contract. *Sikes* v. *Paine,* 10 Ired. (N. Car.) 280.

The opinion of this witness was predicated not only upon his personal knowledge, but upon information given him by his superintendent from reports submitted to his office. The finding is not sufficiently explicit to enable us to know whether these reports were made in the regular course of the business of this firm of architects, nor what that course was. Nor does it tell us whether the evidence of those who made the reports, or the reports themselves, were before the court.

The magnitude of modern construction work, the wide territory of operations, frequently renders it necessary for architects of large business to employ one or more superintendents or inspectors upon their different commissions, and to require from them daily or weekly reports of the progress of the work, and upon the study of these reports the architect is kept abreast of the work, and in reliance thereupon issues his orders, and finally issues or refuses to issue his certificate of completion. Whether or not such reports, made in the course of business, may be admitted in evidence without the testimony of their author, and whether an opinion based in part upon such reports, by a member of a firm to whom these were made, upon the character of the work and its comparison with the requirements of the contract, may be given, need not now be passed upon, but may be left to another occasion, when the record will in all probability present the facts surrounding the claimed evidence with greater particularity.

There is no error.

In this opinion the other judges concurred.