GRACE MCNEAL BROWN, complainant-respondent,

*v.*

CORN EXCHANGE NATIONAL BANK AND TRUST COMPANY OF PHILADELPHIA et al., defendants-appellants.

[Argued October 25th, 1945.   Decided January 31st, 1946.]

*Messrs. Boyle, Archer & Greiner,* for the defendants-appellants.

*Mr. Arthur W. Lewis* and *Mr. William C. Gotshalk,* for the complainant-respondent.

The opinion of the court was delivered by

DONGES, J.

This appeal is from a decree of the Court of Chancery that, by the terms of the will and codicil thereto of Frederick G. Brown, the complainant, Brown's widow, is entitled to have delivered to her two promissory notes executed by her in his favor during his lifetime and also certain stock certificates delivered by her with the notes as collateral security therefor. The decree also dismissed a counter-claim, by which the other two trustees under decedent's will (complainant being the third trustee thereunder) sought to have it decreed that complainant pay the balance due on the notes and deliver certain shares of stock of Philadelphia Electric Company and Public Service Corporation of New Jersey which

had been issued directly to complainant in place of stock of United Gas Improvement Company, which stock was held by said Improvement Company, and was distributed to the common stockholders thereof. It appears that the certificates for the shares of stock of United Gas Improvement Company was held by decedent, during his life, as collateral for complainant's note and, after his death, by the executors of his estate. The opinion of the Court of Chancery is reported in *136 N. J. Eq. 430; 42 Atl. Rep. (2d) 474.*

Certain facts are undisputed. The testator died in 1932. A short time before his death complainant was in difficulties with respect to a brokerage account which she had maintained for trading in the stock market. Her husband, in order to protect her interest in the account, advanced some $46,669.44, taking two notes, one for $19,000 and the other for $27,669.44, both dated August 9th, 1932. She delivered to him the stocks of United Gas Improvement Company as collateral, they not being equal in market value to the obligation. Those notes and the stock were found in testator's safe deposit box after his death.

The executors and trustees named were complainant, her daughter Marie Brown Sheble, and Corn Exchange National Bank and Trust Company of Philadelphia, but it is said that the estate and trust were practically managed by the bank, with the individuals signing such documents as were submitted to them by the officers of the bank.

It appears that these notes were included in the assets of the estate in an account signed by all of the executors and filed, and that state and federal taxes were paid thereon. Interest was paid by complainant from December 9th, 1933, to February 9th, 1943. On July 11th, 1934, she made payment of $2,230 on the note for $19,000 and had returned to her some of the securities held as collateral. On April 30th, 1935, complainant made another payment of $2,770 on account of principal of said note, and had returned to her some of the securities held as collateral. As appears by the correspondence between the bank and complainant, the note was thus reduced to $14,000, and complainant receipted for the

returned collateral. It appears that decedent had applied none of the collateral as security for the note for $27,669.44.

The learned Vice-Chancellor held that complainant, by her course of conduct, had deprived herself of any right to have returned payments made by her for interest or on account of principal prior to the filing of her bill of complaint herein. No appeal is taken from this part of the decree.

Defendants-appellants appeal from so much of the decree as denies them relief under their counter-claim, and decrees that complainant is entitled to have delivered to her the two promissory notes and the collateral accompanying said notes, and decrees that she be allowed her taxed costs in the cause to be paid by said trustees from the estate in their hands.

The question for determination is whether by the provisions of testator's will and codicil the debt of complainant was forgiven and she thereby became entitled to the return of the notes and collateral given to secure one of said notes.

The pertinent provision of the will is:

"*Sixth:* Any payment or payments of either income or principal from my residuary estate hereinbefore directed to be made to any one or all of the beneficiaries hereinbefore named, shall not be subject to the debts, engagements, anticipation or alienation of any beneficiary or beneficiaries, nor shall the same be subject to judgment, attachment or other process of law at the hands of anyone whomsoever."

And the following from the codicil:

"I further give my executors and trustees full power and authority to pay over and deliver from time to time to the person or persons who may at the time be the beneficiary of all or any part of my estate, any or all of the principal (in addition to the income) of that part of my estate in which the particular person or persons may be interested. My idea in making this provision is to enable members of my family or other beneficiary to provide for their suitable support, comfort and maintenance or for the education of any dependent beneficiary, or to meet any emergency such as illness, loss or misfortune that may befall them or any of them. The payment of the principal is to rest solely within the discretion of my trustees and cannot be enforced by any person or persons whatsoever."

When the will and codicil were executed, complainant's debt to the testator was not in existence.

Testator devised a dwelling house property in Riverton, New Jersey, to his daughter, Marie Brown Sheble, for life, and his residence in Riverton to his wife for life. Upon the death of each devisee, the property was to become part of his residuary estate. The residue of the estate was put in trust, the income of which went two-fifths to complainant for life, and three-fifths to her daughter, Marie Brown Sheble, for life, with the whole of the income to Mrs. Sheble after complainant's death, and the principal and income upon the death of both to Mrs. Sheble's children, or their issue in the event of the death of such children.

The theory of the complainant, and that adopted by the Vice-Chancellor, is that the above quoted language of the testator operated to forgive the complainant of the obligation of her notes. As before stated, as to voluntary payments, both of interest and on account of principal, made by the complainant before she filed her bill of complaint, the Vice-Chancellor held she was not entitled to be reimbursed.

The ground upon which the relief was rested seems to be that a spendthrift trust and a testamentary scheme to provide for the welfare of the relatives and beneficiaries operates to protect the beneficiary's interest against all obligations, even those owed to testator. Great reliance is placed on *In re McGregor, 130 N. J. Eq. 5,* where the rule was applied. But there the facts were quite different.

Granting that the rule declared in *In re McGregor* is the proper one, it would seem to justify no relief beyond a decree that the interest of complainant in the income from the trust estate is not liable to application upon the debt represented by the notes. This is clearly provided by the sixth paragraph of the will, but it does not operate to cancel the debt.

Nor does the codicil warrant cancellation of a debt. The clear purport of the quoted provision therein is to make available for any beneficiary any or all of the share or portion of the principal of the trust estate, in which share or portion a particular person has an interest, for the benefit of that particular person. In other words, if the beneficiary of any part of the estate had need of principal for their support,

comfort, maintenance, or education, or to meet an emergency, by reason of illness or misfortune, then the principal was to be used over and above any income payable to such beneficiary. This language merely made available to any beneficiary principal for the beneficiary's benefit from the portion of the estate yielding income to that individual.

We conclude that the decree, in so far as it directs surrender to complainant of the notes and collateral and dismisses the defendants-appellants' counter-claim, should be reversed; that the defendants-appellants are entitled to retain the notes and to have delivered to them the collateral representing that held by them and not voluntarily surrendered; and that part of the decree which provides that complainant is entitled to two-fifths of the income free from any liability on account of the debt due to the estate is affirmed. Since this result leaves the parties practically in the position they were in before the filing of the bill, no costs are allowed to either party, either in the Court of Chancery or in this court.

The cause will be remanded to the Court of Chancery for modification of the decree in accordance with this opinion.

*For affirmance*—None.

*For modification*—The Chief-Justice, Parker, Case, Bodine, Donges, Heher, Perskie, Colie, Oliphant, Wells, Rafferty, Dill, Freund, McGeehan, JJ. 14.